Filed 2/13/20 Certified for Publication 3/6/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FACEBOOK, INC., et al., <br><br> Petitioners, <br> v. <br> THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br> Respondent; <br> DERRICK D. HUNTER et al., <br><br> Real Parties in Interest. | A157143 <br><br> (San Francisco County <br> Super. Ct. Nos. 13035658/13035657) |

Real parties in interest Derrick D. Hunter and Lee Sullivan (defendants) were indicted on murder, weapons, and gang-related charges stemming from a drive-by shooting.  Each defendant served a subpoena duces tecum on one or more of the petitioners, social media providers Facebook, Inc., Instagram, LLC, and Twitter, Inc. (collectively, providers), seeking both public and private communications from the murder victim's and a prosecution witness's accounts.  Providers, none of whom are parties to the underlying criminal case, repeatedly moved to quash the subpoenas on the ground that the federal Stored Communications Act (Act; 18 U.S.C. § 2701 et seq.) barred them from disclosing the communications without user consent.

1

In the challenged order, the trial court concluded that the Act must yield to an accused's due process and confrontation rights, denied the motions to quash, and ordered providers to produce the victim's and witness's private communications for in camera review. Providers seek a writ of mandate directing respondent court to quash the subpoenas.

We conclude the trial court abused its discretion. The record does not support the requisite finding of good cause for production of the private communications for in camera review. Accordingly, we grant the petition and direct the trial court to quash the subpoenas.

### BACKGROUND

### A.

Subject to limited exceptions, the Act prohibits electronic communication service providers from "knowingly divulg[ing]" the contents of a user communication. (18 U.S.C. § 2702(a)(1)-(2), (b)-(c); accord, *Facebook, Inc. v. Superior Court* (*Hunter*) (2018) 4 Cal.5th 1245, 1262, 1264-1265 (*Hunter II*).) Disclosure is authorized if it is made "with the lawful consent of the originator or an addressee or intended recipient of such communication." (18 U.S.C. § 2702(b)(3); *Hunter II, supra*, at p. 1265.) Other exceptions are provided for disclosures made to government entities pursuant to a warrant, court order, or a subpoena. (18 U.S.C. § 2703(a)-(c).) It is undisputed that the Act prohibits the providers from producing private communications to a non-governmental entity without the user's consent. (*Hunter II, supra*, at pp. 1250, 1290; 18 U.S.C. § 2702(a)(1)-(2), (b)(3).) However, the Act allows a provider to divulge information about a subscriber, other than the contents of the communications, "to any person other than a governmental entity." (18 U.S.C. § 2702(c)(6).)

The Act "protects individuals' privacy and proprietary interests [and] reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility." (*Theofel v. Farey-Jones* (9th Cir. 2004) 359 F.3d 1066, 1072–1073.) Congress also sought to encourage the use and development of new technologies by "significantly limit[ing] the potential onus on providers by establishing a scheme under which a provider is effectively prohibited from complying with a subpoena issued by a nongovernmental entity—except in specified circumstances." (*Hunter II, supra,* 4 Cal.5th at p. 1290, italics omitted.)

## B.

In June 2013, Jaquan Rice, Jr., was killed and B.K., a minor, was seriously injured in a drive-by shooting. The car used in the shooting was identified by surveillance video. The video shows the two shooters in the rear passenger seats. The driver of the vehicle was not visible on the video. Witnesses provided inconsistent descriptions of the driver's gender.

Within minutes, police stopped prosecution witness Renesha Lee driving the car used during the shooting. She was its sole occupant. Lee and Sullivan had been dating at that time. When interviewed by police that day, Lee initially "just made up names and stuff." Eventually she told the police that Hunter and his younger brother were among those who had borrowed her car. Lee did not mention Sullivan's name until sometime later when she " 'told them the truth' "—that Sullivan had been involved along with Hunter and his brother. Although Lee told police she had not been in the car at the time of the shooting, one witness identified her as the driver.

The police obtained search warrants directed at Rice's Facebook and Instagram accounts.[1]  The prosecution later shared with the defense information obtained from some (but possibly not all) of Rice's social media accounts.  The police did not seek search warrants as to Lee.

When questioned by police, Hunter's 14-year-old brother confessed to the shooting.  He told police he shot Rice because Rice had repeatedly threatened him, both in person and in social media postings on Facebook and Instagram.  Rice also had "tagged" the boy in a video on Instagram that depicted guns.  Hunter's brother was ultimately tried in juvenile court.

In presenting the case against defendants to the grand jury, the prosecution contended defendants and Hunter's brother were members of Big Block, a criminal street gang, and that Rice was killed because he was a member of a rival gang, West Mob, and because Rice had publicly threatened Hunter's brother on social media.  Defendants were charged with the murder of Rice and the attempted murder of B.K.  (Pen. Code, §§ 187, 664.)[2]

**C.**

Before trial, in 2014, Sullivan's counsel served subpoenas duces tecum (§ 1326, subd. (b)) on Facebook, Instagram, and Twitter, seeking records from their social media accounts.  As to Facebook and Instagram, the subpoenas sought "[a]ny and all public and private content," including user information, associated email addresses, photographs, videos, private messages, activity logs, posts, location data, comments, and deleted information for accounts belonging to Rice and to Lee.  Defendants' subpoenas to Twitter sought

---

[1]  Providers asked us to take judicial notice of the warrants.  We deny the request because providers have not shown the warrants were before the trial court.  (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [reviewing courts need not take judicial notice of evidence not before trial court].)

[2]  Undesignated statutory references are to the Penal Code.

4

similar information as to Lee only. To authenticate the requested records, Sullivan's subpoenas also sought the identity of each providers' custodian of records.

## D.

Providers moved to quash defendants' subpoenas, asserting the Act (18 U.S.C. § 2702(a)(1)-(2)) bars them from disclosing any communication (whether configured as public or private) and that no exceptions applied. Defendants implicitly accepted providers' conclusion that the Act barred providers from complying with the subpoenas but nonetheless argued compliance was required because the Act violated their rights under the Fifth and Sixth Amendments to the United States Constitution. Sullivan pointed out Lee was the only witness who implicated him in the shootings. The trial court (Honorable Bruce E. Chan) accepted the defendants' constitutional argument, denied providers' motions to quash, and ordered providers to produce the requested communications for in camera review.

Providers sought, and this Division issued, a stay of that order. A different panel of this court concluded the Act barred enforcement of defendants' subpoenas and rejected defendants' arguments that the Act, as applied *pretrial*, violated their rights under the Fifth and Sixth Amendments to the federal Constitution. (*Facebook, Inc. v. Superior Court* (*Hunter*) (2015) 240 Cal.App.4th 203, 215-221, judg. vacated and cause remanded by *Hunter II, supra,* 4 Cal.5th at p. 1291.)

Our Supreme Court granted defendants' petition for review. In *Hunter II, supra,* 4 Cal.5th 1245, the court concluded the Act's lawful consent exception (18 U.S.C. § 2702(b)(3)) allowed providers to disclose communications configured by a user to be public. (*Id.* at p. 1274.) *Hunter II* also concluded the pretrial subpoenas were unenforceable under the Act

5

"with respect to communications addressed to specific persons, and other communications that were and have remained configured by the registered user to be restricted." (*Id*. at p. 1250.) Because production of public communications could obviate the need for additional communications, and because the trial court did not develop an adequate record on alternative ways to obtain communications, the *Hunter II* court declined to address the parties' constitutional arguments and remanded the matter to the trial court. (*Id*. at pp. 1250-1251, 1275-1276.)

In particular, the *Hunter II* court observed: "[I]n the lower court proceedings the parties did not focus on the public/private configuration distinction. The trial court made no determination whether any communication sought by defendants was configured to be public (that is, with regard to the communications before us, one as to which the social media user placed no restriction on who might access it) or, if initially configured as public, was subsequently reconfigured as restricted or deleted. *Nor is it clear that the trial court made a sufficient effort to require the parties to explore and create a full record concerning defendants' need for disclosure from providers—rather than from others who may have access to the communications. Consequently, at this point it is not apparent that the court had sufficient information by which to assess defendants' need for disclosure from providers when it denied the motions to quash and allowed discovery on a novel constitutional theory.* In any event, because the record is undeveloped, we do not know whether any sought communication falls into either the public or restricted category—or if any initially public post was thereafter reconfigured as restricted or deleted. [¶] In light of our interpretation of the Act, it is possible that the trial court on remand might find that providers are obligated to comply with the subpoenas at least in

6

part. Accordingly, although we cannot know how significant any sought communication might be in relation to the defense, it is possible that any resulting disclosure may be sufficient to satisfy defendants' interest in obtaining adequate pretrial access to additional electronic communications that are needed for their defense. For these reasons, we will not reach or resolve defendants' constitutional claims at this juncture." (*Hunter II, supra*, 4 Cal.5th at pp. 1275-1276, italics added, fn. omitted.)

**E.**

On remand, the trial court heard renewed motions to quash the pretrial subpoenas. Following *Hunter II*, the Honorable Tracie Brown ruled that the Act prohibited pretrial disclosure of private communications. Judge Brown also ordered Twitter to produce public content to the clerk under seal and scheduled an evidentiary hearing to address Facebook's and Instagram's argument that producing public content would be unduly burdensome.

In reaching these conclusions, Judge Brown rejected the providers' argument that defendants could not subpoena public content from third parties unless there was no other way to obtain it. She also rejected providers' argument that the court could order the prosecutor to issue a search warrant: "[A] warrant can only issue when there's probable cause that evidence of a crime can be found in the location to be searched which is plainly not the situation here." However, Judge Brown made clear that the viability of alternatives to the providers' production of *private* content was to be considered at trial.

**F.**

In 2019, after Judge Brown was elevated to the court of appeal, the case was assigned to the Honorable Charles Crompton for trial. Providers renewed their motions to quash the subpoenas to the extent defendants

7

continued to seek disclosure of restricted or private content from Rice's or Lee's accounts. Sullivan opposed the motions, contending that, now that the case was in a trial posture, his federal due process rights prevailed over users' privacy rights. Sullivan also argued the safe harbor provision (18 U.S.C. § 2707(e)(1)) gave providers a complete defense to any liability under the Act.[3]

Sullivan filed a declaration under seal that provided further detail on the defense theory—that restricted communications were needed to demonstrate Lee's bias stemming from her jealousy over Sullivan's involvement with other women and/or a motive to protect herself from criminal liability for the shootings. Sullivan provided examples of postings on what he claimed to be Lee's Twitter account, such as a photograph of Lee holding a gun and making specific threats. Providers countered that defendants' constitutional arguments were not ripe because any restricted information from Lee's account could be obtained from Lee herself, either voluntarily or as compelled by the trial court, or from the recipients of her communications.

## G.

At hearings in March and May 2019, Judge Crompton indicated he was considering the matter as if it involved *trial* subpoenas (even though new subpoenas had not been served). By May 1, providers had produced all responsive public communications to the court, but they had not yet been reviewed by the trial court or by defense counsel. Providers withdrew their

---

[3] "[G]ood faith reliance on . . . [¶] a court warrant or order . . . [¶] is a complete defense to any civil or criminal action brought under this chapter." (18 U.S.C. § 2707(e)(1); accord, *McCready v. eBay, Inc.* (7th Cir. 2006) 453 F.3d 882, 892.)

argument that producing private communications would be unduly burdensome.

Judge Crompton denied the providers' motions to quash and ordered them to produce responsive private communications to the court for in camera review (the May 1 order). He explained that defendants' Sixth Amendment and due process rights were "very important" and that he was unaware of any viable alternatives "for obtaining this information in the form and the manner, and [with] the authenticity guarantees that the defendants would need it." He added, "to the extent there's any weighing that can be done with the withdrawal of the burden argument, I think that these rights are important enough in this particular case, as I've said, given the relevance of electronic messages that's been raised in this particular case, with these particular charges and these particular defendants, it would certainly outweigh any . . . burden [incurred by providers]."

## H.

Providers filed a petition for writ of mandate in this court and sought a stay of the production order. We initially stayed the production order pending consideration of the petition. After reviewing the briefs we requested, we dissolved the stay and issued an order to show cause why the relief requested in the petition should not be granted. (See *Pugliese v. Superior Court* (2003) 146 Cal.App.4th 1444, 1448; *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1274.) Defendants filed a return to the order to show cause and providers filed a reply. Providers also stated they would not produce private communications, as ordered by the trial court, because they believed compliance would violate the Act.

9

Defendants argue the trial court's May 1 order is correct because the Act violates the federal Constitution to the extent it precludes a criminal defendant from obtaining impeachment evidence or other information material to the defense. We need not reach the constitutional arguments. We agree with providers that the May 1 order should be vacated "for the same reasons that the [*Hunter II* court] remanded this case in 2018." Defendants have not yet presented a ripe conflict between the federal Constitution and the Act. (See *Hunter II, supra*, 4 Cal.5th at p. 1275, fn. 31 [ " '[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us' "].) Because it did not adequately consider the appropriate factors, including alternatives that would avoid a constitutional conflict, the trial court abused its discretion when it found good cause to issue the May 1 order. (See *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186 [abuse of discretion standard applies to discovery orders].)

**A.**

In *Hunter II,* our Supreme Court declined to address the same constitutional arguments at issue here (albeit raised pretrial) because the conflict potentially could be obviated by providers' production of public communications or by obtaining private communications through alternative means. (*Hunter II, supra*, 4 Cal.5th at pp. 1275-1276.)

In a footnote at the very end of the opinion, immediately after our Supreme Court concluded the providers' undue burden argument was best addressed on remand, *Hunter II* states, "The trial court on remand *might also consider* two additional and somewhat related legal issues . . . (1) whether a trial court may compel a witness to consent to disclosure by a provider, subject to in camera review and any appropriate protective or limiting

10

conditions; and (2) whether a trial court may compel the prosecution to issue a search warrant under the Act, on behalf of a defendant." (*Hunter II, supra*, 4 Cal.5th at p. 1291, fn. 47, italics added.)

Defendants attempt to dismiss our Supreme Court's concerns altogether. Specifically, they argue consideration of alternative sources became a moot issue when providers waived their argument that production of private content would be unduly burdensome. Defendants are wrong. *Hunter II* and other authorities make clear that these factors are part of the defendants' good cause showing. (See, e.g., *Hunter II, supra*, 4 Cal.5th at pp. 1275, 1290, 1291, fn. 47.)

When a criminal defendant requests document discovery from a third party, the third party responds by delivering the materials to the clerk of the court. (Pen. Code, § 1326, subds. (b)-(c); Evid. Code § 1560, subd. (b); *Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1074.) "[T]he court may order an in camera hearing to determine whether or not the defense is entitled to receive the documents." (Pen. Code, § 1326, subd. (c).) "Th[ese] restriction[s] maintain[] the court's control over the discovery process, for if the third party 'objects to disclosure of the information sought, the party seeking the information must make a plausible justification or a good cause showing of need therefor.' " (*Kling, supra,* 50 Cal.4th at pp. 1074-1075.) "Of course, any third party or entity—including a social media provider—may defend against a criminal subpoena by establishing that, for example, *the proponents can obtain the same information by other means, or* that the burden on the third party is not justified under the circumstances." (*Hunter II, supra,* 4 Cal.5th at p. 1290, italics added.)

To support the latter proposition, our high court cited *City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118, 1134 (*City of Alhambra*),

11

which discusses factors a trial court must consider and balance when deciding whether a defendant may obtain discovery of police reports that might lead to third party culpability evidence. (*Id.* at p. 1134.) "Specifically, the court should review (1) whether the material requested is adequately described, (2) whether the requested material is reasonably available to the governmental entity from which it is sought (*and not readily available to the defendant from other sources*), (3) whether production of the records containing the requested information would violate (i) *third party confidentiality or privacy rights* or (ii) any protected governmental interest, (4) whether the defendant has acted in a timely manner, (5) whether the time required to produce the requested information will necessitate an unreasonable delay of defendant's trial, (6) whether the production of the records containing the requested information would place an unreasonable burden on the governmental entity involved and (7) whether the defendant has shown a sufficient plausible justification for the information sought." (*Ibid.*, italics added and internal citations omitted; cf. *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 809-814 [describing similar factors to be balanced when trial court determines whether accused's due process right overcomes immunity created by state newsperson's shield law].)

Accordingly, the trial court should have considered these factors, to the extent they are relevant, before finding good cause.

**B.**

Turning to the factors, we conclude that the trial court did not adequately explore them, particularly options for obtaining materials from other sources, prior to issuing its order. Thus, the trial court abused its discretion.

Judge Crompton was principally focused on defendants' justification for seeking the private communications. Defendants did make some attempt to respond to the *Hunter II* court's record development concerns—by filing a sealed declaration from Sullivan's counsel. The sealed declaration sufficiently identifies at least one possible direct message (purportedly originating from Lee) potentially relevant to show her bias. (See Evid. Code, § 780.) Thus, the first (adequate description of material) and final (plausible justification for request) factors weigh in favor of the trial court's ruling.

With respect to the second factor (availability of material via alternative sources), Judge Crompton found, "for reasons that I think we've discussed before," defendants had no viable alternatives to obtain the private social media communications they sought. The record does not support this finding.

Preliminarily, providers maintain the "availability via alternative sources" factor is of elevated importance in this context—where the Act bars only one source of discovery in certain circumstances, rather than an entire category of evidence—under the principle of constitutional avoidance. They emphasize that if the documents an accused seeks are reasonably available elsewhere (or from the providers with user consent), the Act cannot possibly conflict with the accused's constitutional rights by prohibiting him from obtaining them. (See 18 U.S.C. § 2702(b)(3) [consent may be given by "an addressee or intended recipient of such communication"]; *Hunter II*, *supra*, 4 Cal.5th at pp. 1275, 1290; *Facebook, Inc. v. Superior Court* (2017) 15 Cal.App.5th 729, 745, fn. 6 (*Touchstone*), rev. granted Jan. 17, 2018, S245203 ["we fail to see how the [Act] impacts his right to present a complete defense where the evidence he seeks is available through the victim"].) We anticipate our high court will soon specify the precise role this factor plays in

13

*Touchstone.* Here, however, we need not decide whether it serves as a threshold requirement or just one of several factors to be balanced because, even under a balancing test, we conclude the trial court gave this factor (and others) inadequate attention.

We are now concerned primarily with Lee's private communications, not Rice's. It was undisputed below that defendants already had access to at least some of Rice's private communications, which the People obtained via warrant. Yet, in these writ proceedings, defendants failed to address the need for further discovery (from providers) of Rice's private content, even after we sought supplemental briefing requesting support for the trial court's May 1 order. By failing to brief the issue, defendants concede providers' entitlement to relief as to Rice's accounts.

As to alternative ways to obtain private communications from Lee, we agree with the trial court that ordering the People to issue a search warrant was not a viable alternate route to obtain the identified private content. (See § 1525 ["A search warrant cannot be issued but upon probable cause, supported by affidavit"]; *Illinois v. Gates* (1983) 462 U.S. 213, 238 [probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place"].)

However, we reject Sullivan's assertion that it would be futile to try to obtain the communications from Lee because (Sullivan presumes) she will invoke the Fifth Amendment. This is speculation. When the trial court entered its May 1 order, Sullivan had shown no recent effort to subpoena Lee, and Lee had not taken the stand. Moreover, the trial court should have considered whether it could order Lee to consent to disclosure *by providers.* (See *Hunter II, supra,* 4 Cal.5th at p. 1291, fn. 47; *Touchstone, supra,* 15

Cal.App.5th at p. 746, rev. granted ["the trial court can order the account holder to consent to the disclosure by Facebook under section 2702(b)(3)"].)

Furthermore, Sullivan fails to explain why he cannot obtain either consent to the providers' production or the private communications themselves directly from the *recipient* of Lee's messages. In the sealed declaration, Sullivan's defense counsel identifies the recipient of a key communication by name. If a recipient consents to production of private content *by providers* (who have preserved the content of Lee's account), both the conflict with the Act and Sullivan's concerns regarding authentication and spoliation are avoided. (18 U.S.C. § 2702(b)(3); *Touchstone, supra,* 15 Cal.App.5th at p. 737, rev. granted ["under section 2702(b)(3), anyone can seek the contents of private electronic communications by obtaining the consent from the originator of the communication . . . , *or any addressee or intended recipient* of the communication" (italics added)].)

Finally, the trial court made no effort to evaluate Sullivan's continuing need for private content *after* the public content was produced. On May 1, neither the trial court, nor defense counsel, had reviewed the public in camera production. The sealed declaration from Sullivan's counsel was filed almost two months before the May 1 hearing. Thus, it was impossible for defense counsel to reassess Sullivan's need for Lee's private communications in light of what had already been produced. In other words, we do not know whether providers had already produced the key communication identified in the sealed declaration, or comparable communications, as part of their *public* production. We question how the trial court could properly balance all the good cause factors, including Lee's privacy interests and the other policies served by the Act, without any review of what had already been produced.

In sum, the trial court did not follow our Supreme Court's instructions to consider all the relevant factors (*Hunter II, supra,* 4 Cal.5th at pp. 1275-1276, 1290) and, instead, appears to have focused solely on Sullivan's justification for discovery.  The trial court abused its discretion in finding good cause to order providers to produce private content from Rice's and Lee's accounts for in camera review.  We need not address the parties' additional arguments.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its May 1, 2019 order and to enter a new and different order granting providers' motion to quash.

 

_____

BURNS, J.

WE CONCUR:

_____

JONES, P. J.

_____

SIMONS, J.

A157143

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FACEBOOK, INC. et al., <br><br>    Petitioners, <br><br>v. <br><br>THE SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>    Respondent; <br><br>DERRICK D. HUNTER et al., <br><br>    Real Parties in Interest. | A157143 <br><br>(San Francisco County Super Ct. Nos. 13035658/13035657) <br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

    The opinion in the above-entitled matter, filed on February 13, 2020, was not certified for publication in the Official Reports. For good cause, the requests for publication, filed between March 3 and March 4, 2020, are granted.

    Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: _____      _____, P.J.

1

Trial Court: San Francisco County Superior Court

Trial Judge: Hon. Charles Crompton

Attorney for Petitioners: Joshua S. Lipshutz and Michael J. Holecek, Gibson, Dunn & Crutcher LLP
James G. Snell, John R. Tyler, and Anna M. Thompson, Perkins Coie LLP

Attorneys for Real Parties in Interest: Jose Umali for Derrick D. Hunter

Bicka Barlow and Susan Kaplan for Lee Sullivan